# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

BRITISH MARINE LUXEMBOURG, S.A.,

    Plaintiff,

vs.

DEEP SEA FINANCING, LLC, and DRAGADOS MUNDIALES DEL CARIBE S.A. DE C.V.,

    Defendants.

CV 409-023

## ORDER

Plaintiff British Marine Luxembourg, S.A. ("British Marine") brought this action for interpleader against Defendants Deep Sea Financing, LLC ("Deep Sea") and Dragados Mundiales del Caribe S.A. de C.V. ("Dragados") to determine the proper payee under a marine hull insurance policy underwritten by British Marine. Dragados moves to dismiss the interpleader action on the grounds that this Court lacks both subject matter jurisdiction and personal jurisdiction. (Dkt. No. 61.) For the following reasons, Dragados's Motion is **DENIED**.

**BACKGROUND**

Dragados is a Mexican corporation formed by two United States citizens, Chuck Newlin and John Demere. In 2007, the corporation entered into an agreement with a private developer to perform dredging work off the coast of Cancun, Mexico. To finance the dredging operation, Dragados authorized Prime Ocean Marine, LLC ("Prime Ocean"), a Savannah, Georgia company owned by Demere, to obtain a loan and related insurance. Prime Ocean procured a $2 million loan on behalf of Dragados from the Savannah, Georgia office of Branch Banking & Trust ("BB&T"), and executed a promissory note in BB&T's favor. BB&T allegedly conditioned the loan on its designation as loss payee on any insurance policy covering the dredging equipment purchased by Dragados with the proceeds of the loan.

Demere engaged Brennan & Co. LLC, another Savannah, Georgia company, to procure insurance on behalf of Dragados. Brennan & Co. contacted Bowood Partners, Ltd., a Lloyd's of London broker, to solicit quotes from London marine insurers. British Marine ultimately agreed to insure Dragados's dredge, LA CONCHA, and other associated dredging equipment. The marine hull insurance policy

2

underwritten by British Marine provided up to $5 million in coverage and contained a forum selection clause indicating British Marine and Dragados's contractual agreement "to submit to the exclusive jurisdiction of the Courts of Mexico." (See CV 409-022, Dkt. No. 30 Ex. A.)

On the night of June 5, 2007, before Dragados could begin any work on its dredging contract, LA CONCHA ran aground on an environmentally sensitive coral reef while en route to Cancun from Puerto Morelos, Mexico. The grounding of LA CONCHA gave rise to multiple claims under the marine hull insurance policy. British Marine honored some of those claims by making payments to third parties, while other payments were made directly to Dragados. All told, British Marine made over half a million dollars in payments directly to Dragados by April of 2008.

In December of 2008, Deep Sea filed a civil action in the Superior Court of Chatham County, Georgia, claiming entitlement to all payments still due under the marine hull insurance policy.[1] Deep Sea asserts that it purchased its right to the payments from BB&T, the alleged loss payee on the policy. Deep Sea also purports to be the assignee of

---

[1] British Marine subsequently removed the case to this Court in January of 2009. (See CV 409-022.)

3

BB&T's rights under the promissory note that Prime Ocean executed on behalf of Dragados.

British Marine denies that there is any loss payee listed on the policy. Nevertheless, the underwriter filed this statutory interpleader action against Deep Sea and Dragados to determine the proper payee under the policy. Dragados now moves to dismiss British Marine's Complaint in Interpleader. (Dkt. No. 61.) Deep Sea subsequently filed a cross-claim against Dragados seeking payment of all principal, interest, late charges, and fees due under the promissory note. (Dkt. No. 64.)

**DISCUSSION**

I. PERSONAL JURISDICTION

First, Dragados argues that British Marine's interpleader action should be dismissed because this Court lacks personal jurisdiction. A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant must allege sufficient facts in the complaint to make out a prima facie case of jurisdiction. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Where, as here, the defendant challenges the assertion of

jurisdiction by submitting affidavits to the contrary, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). If the plaintiff's supporting evidence conflicts with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Id.

The assertion of personal jurisdiction over a nonresident defendant requires consideration of both the forum state's long-arm statute and the due process requirements of the United States Constitution. Mazer, 556 F.3d at 1274; see also Diamond Crystal Brands v. Food Movers Int'l, Inc., No. 08-14782, 2010 WL 100965, at *4 (11th Cir. Jan. 13, 2010) ("[T]he Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process."). The Georgia Long-Arm Statute authorizes the exercise of personal jurisdiction over a nonresident that, in person or through an agent, "[t]ransacts any business within [the] state." O.C.G.A. § 9-10-91(1). Nothing in this text "requires the physical presence of the nonresident in Georgia or

minimizes the import of a nonresident's intangible contacts with the State." Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 279 Ga. 672, 675, 620 S.E.2d 352 (2005). Rather, jurisdiction exists on the basis of transacting business in Georgia if:

> (1) the nonresident defendant has purposefully done some act or consummated some transaction in [the] state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of [the] state does not offend traditional fairness and substantial justice.

Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 518, 631 S.E.2d 734 (2006) (quoting Robertson v. CRI, Inc., 267 Ga. App. 757, 759, 601 S.E.2d 163 (2004)). The first two prongs of this jurisdictional test are used to determine whether a defendant has sufficient minimum contacts with the State of Georgia. Aero Toy Store, 279 Ga. App. at 518. If minimum contacts are established, courts may look to several factors to determine the fairness of the exercise of jurisdiction, including judicial economy and the burden on the defendant. Id.

In support of its argument that British Marine's interpleader action should be dismissed for lack of personal jurisdiction, Dragados provides the affidavit of

6

its owner and business administrator, Chuck Newlin. Newlin attests that Dragados has never conducted any business in the State of Georgia, and that the company does not maintain any banking accounts or any lines of credit in the state. (Newlin Aff. ¶¶ 9, 12.) In opposition to Dragados's motion, British Marine cites the affidavit of John Demere, a founder and former part-owner of Dragados.[2] Demere attests that he negotiated a $2 million loan on behalf of Dragados with the Savannah, Georgia office of BB&T. (Demere Aff. ¶ 4.) According to Demere, the loan was used to finance Dragados's dredging project and BB&T was given a security interest in the dredge. (Id.)

Construing all reasonable inferences in British Marine's favor, Demere's actions on behalf of Dragados constitute a business transaction within the meaning of Georgia's Long-Arm Statute. See O.C.G.A. § 9-10-91(1); Ga. R.R. Bank & Trust Co. v. Barton, 169 Ga. App. 821, 823, 315 S.E.2d 17 (1984) (holding that a nonresident defendant who obtained a loan from a Georgia bank established legally sufficient contacts with the state). By procuring a $2

---

[2] The Demere affidavit was originally filed in a companion case to this action. See Deep Sea Financing, LLC v. British Marine Luxembourg, S.A., CV 409-022. The Court will consider the affidavit here, however, since both lawsuits arise out of the same factual circumstances and the substantive averments by Demere are facially applicable and relevant to this case.

7

million loan from the Savannah office of BB&T, Dragados "knowingly and purposefully availed [itself] of the financial resources of a Georgia banking institution," and thus purposefully consummated a transaction within the state. Id. Moreover, this transaction is connected with British Marine's interpleader action. According to Demere, as a condition of the loan, BB&T required that it be listed as the loss payee on the marine hull insurance policy underwritten by British Marine and issued to Dragados. (Demere Aff. ¶ 4.) Deep Sea claims it is entitled to the proceeds of the policy as the assignee of BB&T's alleged loss payee rights. Deep Sea's adverse claim to the policy proceeds therefore stems directly from the loss payee designation upon which the loan transaction was allegedly conditioned. Accordingly, there is a direct connection between the loan and British Marine's interpleader action.

Finally, the exercise of personal jurisdiction by this Court does not offend traditional fairness and substantial justice. Generally, "it is not unfair to require a corporation to respond to a suit in a state from which it derives the benefits and privileges of conducting business." Showa Denko K.K. v. Dangle, 202 Ga. App. 245,

8

247, 414 S.E.2d 658 (1991). The procurement of a $2 million loan from a Georgia bank is a sufficient purposeful transaction within the state such that Dragados "should reasonably anticipate being haled into Court there." Id. at 248 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Further, this Court provides the only forum capable of resolving the competing claims to the policy proceeds in a way that would bind all interested parties and provide satisfactory interpleader relief to British Marine, a consideration which weighs heavily in favor of the "judicial system's interest in obtaining the most efficient resolution to controversies." Aero Toy Store, 279 Ga. App. at 518. Personal jurisdiction is therefore appropriate under O.C.G.A. § 9-10-91(1).

The Court must next analyze whether the assertion of jurisdiction over Dragados comports with constitutional due process. The Due Process Clause requires "that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting World-Wide Volkswagen, 444 U.S. at 297). A court has jurisdiction over nonresidents

9

who have established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (internal brackets and quotation marks omitted). The "nature and quality" of the minimum contacts that must be established depends on whether the plaintiff is asserting "general" or "specific" jurisdiction. Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000). For general jurisdiction to apply, the plaintiff must demonstrate that the nonresident defendant's contacts with the forum state are "continuous and systematic." Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th Cir. 1986). A plaintiff asserting specific jurisdiction, on the other hand, must show that the defendant "purposefully directed" its activities toward the forum state and that the litigation results from alleged injuries that arise out of or relate to those activities. Burger King, 471 U.S. at 474. This requirement ensures that a "defendant will not be haled into a jurisdiction solely as a result of 'random,' fortuitous,' or 'attenuated' contacts." Id. at

475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). Once the requisite minimum contacts have been established, the defendant must make a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. Burger King, 471 U.S. at 477.

Here, Dragados's contacts with the State of Georgia are constitutionally sufficient to permit this Court's exercise of specific jurisdiction over the Defendant. By obtaining a substantial loan from a Georgia banking institution, Dragados "purposefully directed" its activities toward the state. Id. at 474. Moreover, this interpleader action "relate[s]" to those activities.[3] Id. at 472. Finally, this Court's exercise of personal jurisdiction over Dragados comports with "fair play and substantial justice." Id. at 476. Dragados purposefully engaged in a substantial transaction with a Georgia financial institution, and thus

---

[3] The Eleventh Circuit has not "developed or adopted a specific approach to determining relatedness." Oldfield v. Pueblo de Bahia Lora, S.A., 558 F.3d 1210, 1222 (11th Cir. 2009). In a recent tort case, however, the circuit court focused its relatedness inquiry on the "direct causal relationship among 'the defendant, the forum, and the litigation.'" Id. (quoting Helicopteros, 466 U.S. at 414). The court later extended this analysis to a breach of contract case. See Diamond Crystal Brands, 2010 WL 100965, at *15-16. Here, there is a direct causal relationship between Dragados, the State of Georgia, and this litigation, because Deep Sea's adverse claim to the funds that are the subject of this interpleader action arises out of the relationship between Dragados and the Georgia lending institution, as well as the purported conditions to those parties' loan agreement.

11

had "fair warning" that this activity would subject it to the jurisdiction of a court in Georgia. Id. at 472.

In sum, the exercise of personal jurisdiction over Dragados comports with the independent dictates of both the Georgia Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment. Accordingly, British Marine's Complaint in Interpleader should not be denied on the basis of personal jurisdiction.

II. FORUM SELECTION CLAUSE

Next, Dragados argues that British Marine's Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the forum selection clause in the marine hull insurance policy divests the Court of subject matter jurisdiction over this interpleader action. The choice-of-forum clause states that the policy "shall be governed by and construed in accordance with the law of Mexico and [that] each party agrees to submit to the exclusive jurisdiction of the Courts of Mexico." (CV 409-022, Dkt. No. 30 Ex. A.)

As a preliminary matter, the Court notes that Rule 12(b)(1) is not the most appropriate procedural vehicle by

12

which to move for dismissal on the basis of a forum selection clause. Such clauses do not deprive a federal court of subject matter jurisdiction. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972); see also Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289 (11th Cir. 1998) ("[T]he basis upon which the defendants seek dismissal–namely, that the agreement of the parties prohibits the plaintiff from bringing suit in the particular forum–is unrelated to the actual basis of federal subject matter jurisdiction—namely, federal question jurisdiction or diversity of citizenship, as the case may be."). Rather, a forum selection clause "merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction." Cent. Contracting Co. v. Md. Cas. Co., 367 F.2d 341, 345 (3d Cir. 1966). The marine hull insurance policy at issue is a maritime contract that falls within the Court's admiralty jurisdiction. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313 (1955). The Court therefore has subject matter jurisdiction to determine the enforceability of the policy's forum selection clause.

In Lipcon, the Eleventh Circuit held that motions to dismiss on the basis of forum selection clauses "are properly brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue." 148 F.3d at 1290. British Marine argues that Dragados's Motion to Dismiss should be denied merely because the motion is styled as a 12(b)(1) motion as opposed to a 12(b)(3) motion to dismiss. However, nothing in Lipcon mandates denial simply because Dragados did not choose the "more appropriate vehicle through which to assert the motion to dismiss." Id. Rather, Lipcon simply directs courts as to the proper procedural treatment of motions to dismiss based on forum selection clauses that specify international fora. See Thomas v. Rehab. Servs. of Columbus, Inc., 45 F. Supp. 2d 1375, 1376-77 (M.D. Ga. 1999) (citing Lipcon as basis for court's decision to consider a motion to dismiss based on a forum selection clause as one brought pursuant to Rule 12(b)(3) where the defendant did not specify the statutory basis for its motion); accord Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006). Here, it is clear that Dragados is asking the Court to give effect to the parties' agreement to litigate disputes in

14

the courts of Mexico "by declining to exercise its jurisdiction." Cent. Contracting, 367 F.2d at 345. The Court will therefore treat Dragados's Motion as one brought pursuant to Rule 12(b)(3).[4]

When a Rule 12(b)(3) motion is based on a forum selection clause, the plaintiff bears the burden of showing that venue is proper. Lobo v. Celebrity Cruises, Inc., 426 F. Supp. 2d 1296, 1304 (S.D. Fla. 2006) (citing Bremen, 407 U.S. at 18). This is because by attempting to enforce the forum selection clause, the movant is actually "trying to enforce the forum that the plaintiff has already chosen: the contractual venue." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). In admiralty cases, a forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Bremen, 407 U.S. at 10. The reasonableness of a forum selection clause is thus a fact-intensive inquiry to be made on a case-by-case basis. Miyoung Son v. Kerzner Int'l Hotels, Inc., No.

---

[4] The defense of improper venue must be raised, either by timely responsive pleading or by motion, within the twenty days allowed for an answer or the objection is waived. Fed. R. Civ. P. 12(h)(1). Dragados first argued that British Marine's interpleader action should be dismissed on the basis of the forum selection clause in the third affirmative defense of Dragados's timely filed Answer. (Dkt. No. 60.) Dragados's objection to venue is therefore timely and sufficient.

15

07-61151-CIV, 2008 WL 4186979, at *3 (S.D. Fla. Sept. 5, 2008). To survive Dragados's Motion to Dismiss, British Marine must therefore show that enforcement of the Mexican choice-of-forum clause would be unreasonable under the particular circumstances of this case.

British Marine argues that if the Court were to enforce the forum selection clause, the "anomalous result would be that the interpleader action would be terminated, but the Deep Sea cross-claim [against Dragados] . . ., which does not arise under the Policy, would remain before the Court." (British Marine Br. in Opp'n 9.) Although the Bremen Court "did not define precisely the circumstances that would make it unreasonable for a court to enforce a forum clause," Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 592 (1991), other courts have found that such "pragmatic considerations" weigh in favor of non-enforcement. Nippon Fire & Marine Ins. Co. v. M/V SPRING WAVE, 92 F. Supp. 2d 574, 577 (E.D. La. 2000).

The plaintiff in Nippon filed suit against multiple defendants in a Louisiana district court after the wire-rod coils its insured purchased were damaged in transit from Nagoya, Japan to Lemont, Illinois. Id. at 575.

Subsequently, the defendants hired to transport the coils once they reached the United States filed cross-claims against the defendants who transported the coils from Nagoya to New Orleans, Louisiana ("the Daiichi defendants"). The Daiichi defendants had inspected the coils in Nagoya and issued a clean bill of lading. They moved to dismiss the plaintiff's claims against them on the grounds that the forum selection clause in the bill of lading mandated that all disputes would be resolved in Japan. Id.

The Nippon court denied the motion. Id. at 577. The court found that if it dismissed the plaintiff's claims against the Daiichi defendants, the cross-claims filed by the other defendants, who "were not parties to the bills of lading or its forum selection clause," would still remain. Id. The court reasoned that even if the choice-of-forum clause were enforced, the Daiichi defendants would have to "litigate the same facts under the same legal theories, thereby undermining the central purpose of [the] forum selection clause-litigating only in Japan." Id.

In Woods v. Christensen Shipyards, Ltd., No. 04-61432-CIV, 2005 WL 5654643, at *1 (S.D. Fla. Sept. 23, 2005),

17

golfer Eldrick "Tiger" Woods sued Christensen Shipyards after the company engaged in the unauthorized use of Woods's name and likeness in violation of a contract between the parties for the purchase and sale of a yacht. Woods's wife Elin subsequently joined the lawsuit as a plaintiff. Citing a forum selection clause in the contract, Christensen Shipyards moved to dismiss the cause of action pursuant to Rule 12(b)(3). The Southern District of Florida denied the motion. Id. at *11-12. The court reasoned that even if it dismissed Tiger Woods's claims against Christensen Shipyards, the company "would still be required to litigate Elin Woods' claims in this Court. . . . [T]he result of enforcement of the forum selection clause would be parallel proceedings in different forums on the same set of facts and legal issues." Id. at *11. The court concluded that "enforcement in light of said considerations would lead to the 'unreasonable' and, arguably, 'unjust' result of judicial inefficiency and potentially competing judgments." Id.

Here, dismissal of British Marine's interpleader claim would produce the same results contemplated by the Nippon and Woods courts. British Marine filed its interpleader

18

action against Deep Sea and Dragados to determine the proper payee under a marine hull insurance policy. Deep Sea subsequently filed a cross-claim against Dragados seeking payment allegedly due under a promissory note governed by the laws of Georgia. (Dkt. No. 64 Ex. B.) Deep Sea's cause of action is therefore independent of the marine hull insurance policy and Deep Sea is not bound by the forum selection clause for the purpose of asserting its cross-claim. Nevertheless, the cross-claim still involves the same facts and many of the same legal theories as British Marine's interpleader claim. Enforcement of the forum selection clause in this case would therefore require "parallel proceedings in different forums on the same set of facts and legal issues." Woods, 2005 WL 5654643, at *11. Under these circumstances, and "for the sake of judicial economy and consistency of judgment," the Court finds that enforcement of the choice-of-forum clause would be unreasonable. Id. Denial of Dragados's Motion to Dismiss pursuant to Rule 12(b)(3) is therefore appropriate.

**CONCLUSION**

For the foregoing reasons, Dragados's Motion to Dismiss is **DENIED**.  (Dkt. No. 61.)

**SO ORDERED**, this ___13th___ day of May, 2010.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA